```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division

                                  )
UNITED STATES OF AMERICA          )
ex rel. BENJAMIN CARTER,          )
                                  )
     Plaintiff,                   )
                                  )
                                  )
          v.                      )     1:08cv1162 (JCC)
                                  )
                                  )
HALLIBURTON COMPANY et al.,       )
                                  )
     Defendants.                  )
                                  )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants Halliburton Co. and Kellogg, Brown & Root's Motion to Dismiss. For the following reasons, the Court will grant the motion.

### I. Background

The allegations in Plaintiff's amended complaint are as follows. The United States Department of Defense (DOD) employs civilian contractors to meet its logistical support needs during combat, peacekeeping, and humanitarian assistance missions. In 1992 the Logistics Civil Augmentation Program (LOGCAP) was created to create umbrella support contracts for all support services necessary in a conflict. In 2001, the United States Army (Army) awarded LOGCAP III to Kellogg, Brown & Root

1

(KBR)[1] to support operations in Iraq, Kuwait, Afghanistan, Djibouti, the Republic of Georgia, and Uzbekistan.  This contract is a cost-plus award fee contract.

In December 2001, the Government awarded contract DAAA09-02-D0007 to KBR, as part of LOGCAP III.  It included water service support to United States and multi-national force bases in Iraq.  Under that contract, KBR is responsible for delivering potable and non-potable water from a Reverse Osmosis Water Purification Unit (ROWPU) to each base's holding tanks and conducting point-of-use testing throughout the base for chlorine residuals, pH, temperature, total dissolved solids, and turbidity.  It is also required to hire water-quality specialists to conduct the testing and maintain documentation from these tests.

At Camp Ar Ramadi, the ROWPU unit was operated by regular Army personnel.  They took raw water from the Euphrates River at a point less than two miles downstream from a human sewage discharge point that, "in scientific probability," was contaminated by a variety of disease-causing organisms.  The water was pumped to the ROWPU, which purifies water by separating out dissolved solids and other impurities.  The resulting water was distributed for potable and non-potable uses at the camp.

---

[1] Defendants submit that "Kellogg, Brown & Root" is not the proper name of the entity involved in the LOGCAP III contract.  The proper entity, according to Defendant, is "Kellogg, Brown & Root Services, Inc."  See Def.'s Reply at 1 n.1.

*Qui tam* plaintiff Benjamin Carter (Carter) is a water purification specialist with twenty years of experience. He was hired by Halliburton Co. (Halliburton) and KBR (Defendants) in January 2005 as a ROWPU Operator. On January 13, 2005, Defendants assigned him to Camp Ar Ramadi, Iraq.

Carter was not permitted to inspect the camp's water delivery systems until early March 2005. In late March, he was promoted to acting ROWPU foreman. As foreman, he was not provided with any instruction, policy or procedures regarding the operation of the ROWPU or the maintenance of water quality standards. The previous ROWPU foreman, however, informed Carter that the water was being chlorinated and was safe.

On March 23, 2005, another KBR employee reported to management that he had discovered an organism in his toilet. Carter inspected this organism and determined that it was a larva. At that point, Carter tested the water in the employee's bathroom for chlorine. The test was negative. He then tested several other locations in the KBR section of the base, including the non-potable water holding tank, all of which were also negative for chlorine. Carter suggested to the KBR site managers that the military be notified to chlorinate the water, but was told that the military was none of his concern.

On July 15, 2005, Carter received an e-mail from William Granger, KBR's Theater Water Quality manager for Iraq and

Kuwait, conveying the following statements.  None of the water at Camp Ar Ramadi was treated and, in fact, the contamination of this water was roughly two times that of normal untreated water from the Euphrates River.  Further, the water had been untreated and untested throughout the entire life of the camp and the camp had no water testing kits until late March 2005.  At Camp Ar Ramadi, KBR delivered waste water generated by the ROWPU to non-potable holding tanks, instead of delivering the product water, even though Army regulations require that waste water be returned to the water source.  Using waste water is equal to using raw water from the Euphrates River.  Finally, none of the camps in Iraq possess any documentation showing that any water testing had been performed.

Plaintiff also alleges that, from December 2001 to the present, Defendants failed to inspect and test potable and non-potable water at the point-of-use at all United States military bases in Iraq, as required under LOGCAP III.  Defendants did not provide testing kits to perform the required tests and failed to hire water quality specialists qualified to conduct these tests and point-of-use testing.  Defendants distributed untreated waste water from the ROWPU for use as non-potable water.  Defendants billed the United States government under LOGCAP III as though they complied with the water testing requirements in the relevant contracts.

Plaintiff filed an amended complaint in the Central District of California on February 10, 2006 (Amended Complaint). The Amended Complaint alleges one cause of action - violations of the False Claims Act, 31 U.S.C. §§ 3729-33.  Plaintiff claims that Defendants knowingly submitted, or caused to be submitted, false claims for payment to the United States.  He also alleges that Defendants knowingly made or used false records or statements to obtain payment of the false or fraudulent claims from the United States.  Finally, by these actions, Carter alleges that Defendants caused the United States Treasury to make wrongful payments.

Defendants filed a Motion to Dismiss or Transfer Venue on September 24, 2008.  Plaintiff opposed the motion on October 6, 2008 and Defendants replied on October 14, 2008.  Plaintiff filed an ex parte application to file a sur-reply and the sur-reply itself on October 21, 2008.  Defendants filed an opposition and response to Plaintiff's sur-reply on October 22, 2008.  The Central District of California permitted the sur-reply and the response thereto on October 22, 2008.  It granted Defendants' Motion to Transfer on November 3, 2008.

The Eastern District of Virginia received this case on November 7, 2008.  On November 17, 2008, the parties filed a joint motion requesting that the Court consider the Motion to Dismiss based on the parties' previously-filed submissions and

one supplemental brief from each party. The Court granted this motion on November 21, 2008. Plaintiff and Defendants filed their respective Supplemental Briefs on November 25, 2008. Defendants' Motion to Dismiss is currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

## III. Analysis

The Federal False Claims Act (FCA) creates liability for any person who presents a false claim to the United States

government in one of seven ways. 31 U.S.C. § 3729(a). It also empowers private individuals to bring suit for violations of the FCA on the government's behalf in a *qui tam* action. *Id.* at § 3730(b). The Amended Complaint presents claims for violations of § 3729(a)(1) ("knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval") and § 3729(a)(2) ("knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government"). The Court finds that neither of these claims is properly pleaded. It will grant Defendant's Motion to Dismiss and give Plaintiff leave to amend the Complaint.

    A.    <u>Violations of 31 U.S.C. § 3729(a)(1)</u>

The Amended Complaint alleges that "[b]y their conduct above . . . defendants knowingly submitted, or caused to be submitted, false claims for payment to the United States, as set forth above, in violation of 31 U.S.C. § 3729(a)(1)." Am. Compl. at ¶ 17. The "conduct above" includes the allegations in ¶¶ 1-15, which allege the facts set forth in section I above. Taken together, these allegations state the following: (1) Defendants were responsible for testing water supplied to United States military bases in Iraq under the LOGCAP III contract, (2)

7

Plaintiff has personal knowledge of Defendants' failure to so test the water at Camp Ar Ramadi, (3) Plaintiff believes, based on information given to him by another employee of Defendant, that such testing was not done at any military bases in Iraq, (4) Defendants billed the Government under the LOGCAP III contract as though they had complied with the water testing requirements in LOGCAP III throughout Iraq, (5) causing wrongful payments to be made from the United States Treasury. *See* Am. Compl. at ¶¶ 9, 11, 14, 15, 18.

Defendants argue that Plaintiff's claims must be dismissed because Plaintiff's allegations fail to satisfy the heightened pleading requirements imposed on fraud allegations by Federal Rule of Civil Procedure 9(b). They also argue that they should be dismissed under Rule 12(b)(6) because the Amended Complaint only alleges Defendants' knowing breach of their contract with the Government, not any false claims made on the Government.

1.  *Rule 9(b): Pleading Fraud with Particularity*

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he

obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (collecting authorities) [hereinafter *Harrison I*]. The purpose of this rule is to put the defendant on notice of the conduct complained of, to protect defendants from frivolous claims, to eliminate fraud actions in which all the facts are learned after discovery, and to protect defendants from the harm to their goodwill and reputation that often results from fraud claims. *Id.* at 784 (citation omitted). Failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). *Id.* at 783 n.5.

The heightened pleading requirements of Rule 9(b) apply to FCA actions. *Id.* at 784. Courts have specifically held that "insiders privy to a fraud on the government should have adequate knowledge of the wrongdoing at issue [and] should be able to comply with Rule 9(b)." *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations omitted); *see also United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 380 (4th Cir. 2008) [hereinafter *Wilson*]. Nonetheless, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if [it] is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense . . ., and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison I*, 176 F.3d at 784.

Plaintiff's only allegations regarding the Defendants' false claim on the Government are that (1) Defendants billed the Government under LOGCAP III as though they complied with water testing requirements, Am. Compl. at ¶ 9, and that (2) Defendants "submitted, or caused to be submitted, false claims for payment to the United States, as set forth above," *id.* at ¶ 17.  Nothing "set forth above," however, provides additional facts or allegations relating to the alleged false presentment.[2]

These statements clearly do not meet the requirements of Rule 9(b).  Plaintiff makes no allegations regarding "the time, place, and contents of" Defendants' submission of a false claim to the Government.  *See Harrison I*, 176 F.3d at 784.  He merely alleges that Defendants failed to comply with the requirements of LOGCAP III and appends a "formulaic recitation of the elements" of a § 3729(a)(1) claim.  *See Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65.

Plaintiff's clearest allegations pertain to the harm that the contaminated water wrought on the civilian and military personnel living on the United States military bases in Iraq.  While the alleged actions that caused those harms are reprehensible, Plaintiff cannot rely on reprehensibility and

---

[2] At oral argument, Plaintiff alleged that the Defendants "passed through" to the Government the salaries of individuals who were either unqualified to perform the water purification work or failed to actually perform it.  According to Plaintiff, these constitute false claims on the Government, which the Government paid.  These allegations, however, are not contained in the Amended Complaint and the Court will not address them.

revulsion to state an FCA claim when he cannot meet the applicable pleading requirements. The Amended Complaint provides the Court with no basis from which to conclude that Plaintiff possesses the "substantial prediscovery evidence" of the relevant facts, as required by *Harrison I*. The Court will dismiss this claim for failure to satisfy the heightened pleading requirements that Rule 9(b) imposes on all claims of fraud.

        2.    *Rule 12(b)(6): Stating a Claim Upon Which Relief Can be Granted*

The Fourth Circuit's "test for False Claims Act liability" is "(1) whether there was a false statement or fraudulent course of conduct, (2) made or carried out with the requisite scienter, (3) that was material, and (4) that caused the government to pay out money or forfeit moneys due." *Harrison I*, 176 F.3d at 788. The Court, having already dismissed this claim for its failure to comply with Rule 9(b), finds that it is not necessary to address Plaintiff's second argument at this time.

  B.    Violations of 31 U.S.C. § 3729(a)(2)

The Amended Complaint also alleges that "defendants knowingly made or used false records or statements to get false or fraudulent claims paid by the United States, in violation of 31 U.S.C. § 3729(a)(2)." Am. Compl. at ¶ 17. Defendants argue that this claim also should be dismissed under both Rule 9(b) and Rule 12(b)(6) because the Amended Complaint merely alleges that

11

Defendants breached their contract with the Government, not that they created or used false records to obtain payment on a fraudulent claim from the Government.

1.   *Rule 9(b): Pleading Fraud with Particularity*

The allegation in ¶ 17 of the Amended Complaint is not sufficient to satisfy Rule 9(b) because it is merely a "formulaic recitation of the elements" of a § 3729(a)(2) claim.  *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65.  The Court thus looks to other paragraphs of the Amended Complaint which might support that assertion.  The only other allegation that relates to Defendants' creation or use of false records or statements to obtain payment from the Government, however, is that Defendants billed the Government under LOGCAP III as though they complied with water testing requirements.  Am. Compl. at ¶ 9.

This allegation also clearly fails to meet the requirements of Rule 9(b).  There is no mention of "the time, place, and contents of" Defendants' use of false statements or records, or of how those statements or records led to the Government's payment of money to Defendants.  *See Harrison I*, 176 F.3d at 784.  The Court will dismiss Plaintiff's 31 U.S.C. § 3729(a)(2) claim for failure to satisfy the heightened pleading requirements that Rule 9(b) imposes on fraud claims.

      2.   *Rule 12(b)(6): Stating a Claim Upon Which Relief Can be Granted*

As noted above in section III.A.2, the Fourth Circuit's "test for False Claims Act liability" is "(1) whether there was a false statement or fraudulent course of conduct, (2) made or carried out with the requisite scienter, (3) that was material, and (4) that caused the government to pay out money or forfeit moneys due." *Harrison I*, 176 F.3d at 788. The Court, having already dismissed this claim for failure to comply with Rule 9(b), finds that it is not necessary to address this standard at this time.

## IV. Conclusion

For these reasons, the Court will grant Defendants' Motion to Dismiss.

An appropriate Order will issue.

January 13, 2009                    _____/s/_____
Alexandria, Virginia                    James C. Cacheris
                                        UNITED STATES DISTRICT COURT JUDGE