IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES *ex rel.*, ) | |
| BENJAMIN CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | UNDER SEAL |
| v. ) | |
| ) | 1:08cv1162 (JCC/JFA) |
| HALLIBURTON *et al.*, ) | |
| ) | |
| Defendants. ) | |

**M E M O R A N D U M   O P I N I O N**

This case is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 31 U.S.C. § 3730(b)(5). [Dkt. 291.] Specifically, Defendants Halliburton Company, KBR, Inc., Kellogg Brown & Root Services, Inc. and Service Employees International, Inc. (collectively "Defendants" or "KBR") invoke § 3730(b)(5) of the False Claims Act ("FCA") which bars a Relator from "bring[ing] a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). This provision is "known colloquially as the Act's first-to-file bar." *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004); *Erickson ex rel. United States v. American Institute of Biological Sciences*, 716 F. Supp. 908, 918 (E.D. Va. 1989)(explaining that "this provision establishes a first in time rule"). It is undisputed

1

that section 3730(b)(5) is jurisdictional in nature; a Court cannot properly have jurisdiction over a FCA *qui tam* action when it is based on the facts underlying a pending case. *Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187 (9th Cir. 2001) (referring to § 3730(b)(5) as a jurisdictional bar); *Grynberg* 390 F.3d at 1279 n.1 (finding § 3730(b)(5) "is a jurisdictional limit on the courts' power to hear certain duplicative *Qui Tam* suits"). The issues before the Court are (1) whether this action, No. 1:08cv1162 (JCC/JFA), is "related" to an under seal action filed in the Central District of California, No. 05cv08924; and (2) whether the California action can properly be considered "pending" as Plaintiff argues it is legally insufficient. For the following reasons, this Court will grant Defendants' Motion.

## I. Background

On March 23, 2010, in the week before trial, the Department of Justice ("DOJ") disclosed to the parties the existence of Civil Action No. 05cv08924 in the Central District of California filed on December 23, 2005 (the "California Case"). The case before this Court was filed in February 2006, while the California Case was filed in December 2005. [*See* Dkt. 5.] Relator Carter and California Relators, former employees of the Defendants, brought separate FCA *qui tam* actions alleging that Defendants falsely billed the government for services

provided to United States Military Forces serving overseas. Determining whether § 3730(b)(5) bars Carter's action as a "related action based on the facts underlying the pending [California] action" necessarily involves reviewing the facts and allegations of the under seal California action.

    A.    <u>California Action</u>

The California case alleges that that Defendants "knowingly submitted, or caused to be submitted, false claims for payment to the United States, as set forth above, in violation of 31 U.S.C. § 3729(a)(1)." (California Compl. ¶ 21.) California Relators further allege that "defendants knowingly made or used false records or statements to get false or fraudulent claims paid by the United States, in violation of 31 U.S.C. § 3729(a)(2)." (California Compl. ¶ 21.) In support of these allegations California Relators specifically claim that "from approximately December 2001 to present, defendants defrauded the DOD by systematically inflating, and causing to be inflated, labor costs incurred on the LOGCAP III Contract."[1] (California Compl. ¶ 13.) Defendants "routinely instructed . . . employees to charge no less than 12 hours of work per day, 7 days per week, on their time sheets even though most of those hours were never worked." (California Compl. ¶ 13.) The

---

[1] LOGCAP III was the Logistics Civil Augmentation Program (LOGCAP) contract put out by the Department of Defense for civil logistical support for military operations "in Iraq, Afghanistan, and other countries." (California Compl. ¶ 2.)

3

California Complaint continues to allege that "defendants knowingly inflated labor costs by [i]nflating hours worked on timesheets on a daily basis to reflect 84 hours a week that management required of every employee in order to meet corporate mandated goals." (California Compl. ¶ 23.) By "every employee," California Relators include all of the estimated "40,000 employees in Iraq." (California Compl. ¶¶ 2, 13, 23.) The over-charging allegedly occurred "from approximately December 2001 to present [December 2005]" and that "[defendant] KBR's timekeeping policy and timesheet and work hours guidelines for the LOGCAP III Contract mandat[ed] a goal of 84 hours to be charged by their employees every week" regardless of the time actually worked. (California Compl. ¶ 14.) California Relators also allege that this "practice of inflating labor costs extends to Kuwait, Djibouti, Republic of George, and Uzbekistan" in addition to Iraq and Afghanistan. (California Compl. ¶ 23.) There are no limitations as to the type of work that was allegedly being over-charged.

The two California Relators worked exclusively in Iraq and Afghanistan. Relator 1 was working for Defendants in Iraq as a plumber. He was stationed at two camps in Iraq from August 23, 2005 until December 16, 2005, for approximately 115 days. (California Compl. ¶¶ 15-19.) During that time period he was allegedly directed by KBR Human Resources and other supervisors

4

to always charge 12-hour days on his time sheets, and spoke with other individuals who were told to do the same. (California Compl. ¶¶ 15-19.) Relator 2 was originally hired to work as a carpenter but was transferred to a role as an Administrative Specialist where he processed time sheets and work orders. (California Compl. ¶¶ 20-22.) Relator 2 was stationed in Uzbekistan and Afghanistan from August, 2004 until August, 2005 – for approximately one year. (California Compl. ¶¶ 20-22.) During his time as an Administrative Specialist, Relator 2 found that "it was common for employees to just sit around waiting for work, but KBR required that they be shown as 'on the clock' 12 hours every day, and submit 12 hours on their timesheets." (California Compl. ¶ 21.) Relator 2 created a personal database comparing the time entered in work orders and daily work logs with the inflated time entered on the timesheets. (California Compl. ¶ 21.) At no time were the California Relators stationed with the Relator in this case.

    B. <u>Carter's Action</u>

Here, Relator Benjamin Carter filed his original Complaint under seal on February 1, 2006 in California (*See* Mem. in Supp. of Mot. to Dismiss at 3, n. 2); his first Amended Complaint on February 10, 2006 [Dkt. 5]; and the current Second

5

Amended Complaint on January 28, 2009 (Dkt. 92).[2]  There is no
dispute that Carter's action was filed after the California
Complaint.  Relator presently alleges, that Defendants
"knowingly presented [or caused to be presented] to an officer
or employee of the United States Government . . . false or
fraudulent claims for payment or approval" in violation of 31
U.S.C. § 3729(a)(1).[3]  (Second Amended Complaint ("SAC") ¶¶ 157-
158; See Am. Compl. ¶ 17.)  Relator also alleges that
"Defendants knowingly made, used, or caused to be made or used,
false records or statements to get false or fraudulent claims
paid or approved by the Government" violation of 31 U.S.C. §
3729(a)(2).  (SAC ¶¶ 192-193; Am. Compl. ¶ 17.)

     The conduct underlying Relator's claims is that while
Relator was working in Iraq, he and his fellow employees were
ordered to record time entries on time sheets for work that they
did not perform and that these false time sheets were submitted
to the Government for payment for work that was not performed.
Relator was in Iraq from mid-January 2005 until April 2005 where
he was employed by Defendants as a Reverse Osmosis Water
Purification Unit ("ROWPU") Operator.  (SAC ¶¶ 3, 41, 69.)
During that period he worked at two camps, Al Asad and Ar

---

[2] Carter's counsel at the time of the original filing was Don Warren, the same California attorney who represented the California Relators in their *qui tam* action.
[3] Section 3729(a)(1) has been re-codified since Relator filed his Second Amended complaint and is now codified at 31 U.S.C. § 3729(a)(1)(A).

Ramadi. (SAC ¶¶ 41, 69.) Relator alleges "the Al Asad Defendant ROWPU employees were not engaged in any actual water purification duties on discrete dates in January 2005" but nevertheless, the "Al Asad ROWPU employees' time were billed under LOGCAP III" as if they had been working. (SAC ¶¶ 130-131.) Similarly, while working at Ar Ramadi, Relator was "required to fill in timecards stating that he worked 12 hour [*sic*] a day, each day, with uniformity, on ROWPU functions . . ." and during this time Relator "actually worked 0 hours per day on ROWPU functions." (SAC ¶¶ 54-55.) Relator also alleges that all "trade employees" such as himself were required to submit time cards totaling "exactly 12 hours per day and 84 hours per week" and that it was the "routine practice" of these employees to do so. (SAC ¶¶ 60-61, 65, 67-68.) In essence, Relator contends that Defendants had knowledge that at the Ar Ramadi and Al Asad camps in Iraq, ROWPU "personnel were not engaged in any water testing or purification duties in support of the LOGCAP Contract;" and "[d]efendants were billing the Government for work that was not actually performed." (SAC ¶¶ 163, 166.) In support of these allegedly false claims, Defendants presented the falsified time sheets of ROWPU employees. (SAC ¶¶ 192-193.)

## II. Standard of Review

Defendants' Move to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and 31 U.S.C. § 3730(b)(5).  Title 31 U.S.C. § 3730(b)(5) states: "when a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).  If an action based on the facts underlying a pending case comes before the court, a court must dismiss the later filed case for lack of jurisdiction.  *See Lujan,* 243 F.3d at 1187; *Grynberg,* 390 F.3d at 1279.

### III. Analysis

This Court's analysis focuses on two issues.  First, the Court must determine whether the action before it is "related" to the first-filed action.  Second, it must determine if the California action is properly considered "pending" so as to act as a jurisdictional bar to the instant case.  The Court will address them each in turn.

A.  Related Action

In interpreting what constitutes a "related action" under this provision, the Court shall first look to the plain language of the statute.  "In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary

8

circumstance, is finished." *Ramey v. Director, Office of Workers' Compensation Program*, 326 F.3d 474, 476 (4th Cir. 2003) (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992)). Section 3730(b)(5)'s plain language unambiguously establishes a first-to-file bar, preventing successive Relator/plaintiff's from bringing related actions based on the same underlying facts. *See Lujan*, 243 F.3d at 1187. Importantly, Congress drafted the statute to bar all "related actions" not all "identical actions," thus a subsequent action may differ from a first-to-file action, yet nevertheless be jurisdictionally barred so long as it is considered a "related" action. *See Grynberg*, 290 F.3d at 1279 (holding "an identical facts test would be contrary to the plain meaning of the statute, which speaks of 'related' *qui tam* actions, not identical ones.") Some courts have held that "if the later-filed complaint alleges the same type of wrongdoing as the first, and the first adequately alleges a broad scheme encompassing the time and location of the later filed, the fact that the later complaint describes a different time period or geographic location . . . does not save it from the absolute first-to-file bar of § 3730(b)(5)." *U.S. ex rel. Ortega v. Columbia Healthcare, Inc.*, 240 F.Supp.2d 8, 13 (D.D.C. 2003).

In determining if the actions are "related," courts have adopted slight variations of a common approach:

9

§ 3730(b)(5) is an "exception-free" provision that bars subsequently filed actions alleging the "same material elements described in an earlier suit, regardless of whether the allegations incorporate somewhat different details."[4] *Lujan,* 243 F.3d at 1189. These variations stem from a two-prong test first used in the Eastern District of Virginia case of *Erickson ex rel. United States v. American Institute of Biological Sciences*, 716 F. Supp. 908 (E.D. Va. 1989). There the court found that "the *qui tam* complaint filed first blocks subsequent *qui tam* suits" unless it is "(a) based on facts different from those alleged in the prior suit and (b) gives rise to separate and distinct recovery by the government." *Id.* at 918. Similar tests have arisen in the District of Connecticut where the later claim is barred unless it "(1) it alleges a different type of wrongdoing, based on different material facts than those alleged in the earlier suit; and (2) it gives rise to a separate recovery of actual damages by the government"[5] and the District of Columbia where a later-filed *qui tam* complaint is barred unless "(1) it alleges a different type of wrongdoing, based on different material facts than those alleged in the earlier suit; and (2) it gives rise to separate and distinct recovery by the

---

[4] Some Courts have required the same "type of fraud;" (*See Grynberg,* 290 F.3d at 1280) the same "essential facts;" (*See United States* ex rel. *LaCorte v. SmithKline Beecham Clinical Labs*, 149 F.3d 227, 232 (3rd Cir. 1998)) or the same "material elements of fraud" (*Lujan*, 243 F.3d at 1189).
[5] *United States ex rel. Capella v. United Technologies Corp.,* No. 3:94-CV02063 (EBB), 1999 WL 464536 (D.Conn. June 3, 1999).

10

government"[6].  This Court finds the *Erickson* approach most appropriate in this case and will thus find that Carter's suit is barred unless: (1) it is based on facts different from those alleged in the prior suit; and, (2) gives rise to separate and distinct recovery by the government. *See Erickson* at 918.  In determining whether the first-to-file bar applies, the Court looks "at the facts as they existed at the time that action was brought."  *Grynberg*, 390 F.3d at 1279.

The Court first examines whether the claims are "based on facts different from those alleged in the prior suit." *Erickson*, 716 F. Supp. at 908.  Both cases are brought alleging that Defendants submitted false claims of payment to the Government and falsified records in support of that end.  Here, Relator Carter alleges that ROWPU personnel were not performing ROWPU operations of water testing and purifying as evidenced by the condition of the water and the observations of Relator and others.  (SAC ¶¶ 42-49, 52, 55-56, 77-78, 80-86, 89-94, 163; See Am. Compl. ¶¶ 11-15 .)  Nevertheless, according to Carter's Complaint, Defendants required, and it was common practice of employees to submit, time sheets fraudulently showing employees worked "exactly 12 hours per day and 84 hours per week."  (SAC ¶¶ 53-58, 60-61, 65, 67-70; See Am. Compl. ¶ 9.)  Relator Carter originally alleged that this occurred "from approximately

---

[6] *Ortega v.*, 240 F.Supp.2d at 12 (D.D.C. 2003)

11

December 2001 to present" and that it occurred at "all military bases in Iraq" (Am. Compl. ¶ 11), Relator currently alleges false claims submitted based on time sheets recording hours worked between September 1, 2004 to April 2005 at the Al Asad and Ar Ramadi bases in Iraq. (SAC ¶¶ 61, 131, 191.) It is the submission of the false timesheets in support of the false claim for payment for the ROWPU services that were not actually performed that forms the basis of Relator's claims.

The California Complaint casts a broader net. The California Relators allege that Defendants had a policy of fraud for LOGCAP III employees, including "trade employees" such as ROWPU employee Carter, requiring the employees to record twelve hours worked per day, seven days a week on their time sheets regardless of the time actually worked. (California Compl. ¶¶ 13-14.) These allegations encompass activity "from December 2001 to the present," including the period covered by Relator Carter's allegations. (California Compl. ¶ 13.) The California Relators allege that the Defendants' illegal conduct occurred across all of the countries covered by the LOGCAP III contract, thus including, but not specifically naming, the Al Asad and Ar Ramadi bases alleged by Carter. (California Compl. ¶ 23.)

Relator Carter argues that the California case can be distinguished in several ways. First, Relator argues, "in short, Mr. Carter is the first to file a complaint alleging that

the Defendants falsely billed the Government for ROWPU work not performed." (Opp. at 8.) This narrow reading of the complaints is premised on the fact that the California Relators were not in Iraq, let alone at the Al Asad and Ar Ramadi camps, until August 2005, after Relator Carter had left. (Opp. at 8.) The first-to-file bar can apply even when there are geographic and temporal differences in the allegations. *See e.g., Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009) (holding that "a relator cannot avoid § 3730(b)(5)'s first-to-file bar by simply adding factual details or geographic locations to the essential or material elements" of an earlier-filed fraud claim); *Lujan*, 243 F.3d at 1189. The California case alleges that Defendants "knowingly submitt[ed] . . . false records or statements to get false claims paid, by systematically inflating labor costs incurred on the [LOGCAP III] contract in Iraq." (California Compl. ¶ 2.) Specifically they "routinely instruct[ed] the LOGCAP III employees to charge no less than 12 hours of work per day, 7 days per week, on their timesheets even though most of those hours were never worked." (California Compl ¶ 13.) The first filed complaint covers all LOGCAP III employees in Iraq from December 2001 to the date of filing, it is a "broad scheme encompassing the time and location of [Carter's complaint]." *See United States ex rel. Ortega,* 240

F.Supp.2d at 13.  Carter's action encompasses conduct that is a subset of the conduct alleged in the California case.

Relator here next tries to characterize the California case as "an overbilling for work performed case" and "Mr. Carter's [a]s a no purification and testing fraud case."  (Opp. at 10.)  This is not accurate.  Mr. Carter has brought a FCA case, alleging that Defendants "knowingly presented [or caused to be presented] to an officer or employee of the United States Government . . . false or fraudulent claims for payment or approval" in violation of 31 U.S.C. § 3729(a)(1) and that "Defendants knowingly made, used, or caused to be made or sues, false records or statements to get false or fraudulent claims paid or approved by the Government" violation of 31 U.S.C. § 3729(a)(2).  (SAC ¶¶ 157-158, 192-193; Am. Compl. ¶ 17.)  To prove his case, Carter must show that Defendant employees were reporting hours on timesheets that they did not work and that Defendants, in turn, falsely billed the Government.  The "no purification and testing" issue in the case is merely evidence that the time sheets filled out by ROWPU personnel, whose only responsibilities were water "purification and testing," were false.  The California case alleges that LOGCAP III employees falsely recorded hours on timesheets that they did not work, resulting in false billings of their labor to the Government. (California Compl. ¶ 2, 12-32.)  This is "same type of

wrongdoing," as seen in Carter's case, albeit across a broader spectrum of LOGCAP III tasks. *See Lujan*, 243 F.3d at 1188. Here the Court finds that Relator Carter's case is not based on facts that are materially different from those alleged in the California case.

Next the Court examines whether Carter's action "gives rise to separate and distinct recovery by the government." *Erickson,* 716 F. Supp. at 908. Given that the factual allegations of Carter are simply a subset of the allegations in the California complaint, the recovery for false billing sought by Relator Carter on behalf of the government are also a subset of the recovery available to the government if there is a successful recovery in the California case. If the government is successful in its intervention in the California case it would recover for the false billing of 12 hours a day, seven days a week by all LOGCAP III employees, submitted from December 2001 until the present, for all types of LOGCAP III work on all bases covered by the LOGCAP III contract. Carter's recovery is limited to the over-billing that occurred by ROWPU personnel at the Al Asad and Ar Ramadi bases between September 2004 and April 2005. The potential recovery for Carter's allegations would be a limited subset of this the California recovery.

As a subset of the California case, Carter's action clearly must be considered a "related action" under § 3730(b)(5)

as it is not "based on facts different from those alleged in the prior suit" and does not "give[] rise to separate and distinct recovery by the government."[7] *Erickson*, 716 F. Supp. at 908. After determining that Carter's action must be considered a "related action" to the California case, for this to function as a jurisdictional bar this Court must determine that the California case is "pending" within the meaning of § 3730(b)(5).

    B.    <u>Pending Action</u>

Section 3730(b)(5) bars plaintiffs from bringing a "related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). It is not disputed that the California case has not been yet been dismissed by the District Court of California, nevertheless, Relator argues that his action cannot be barred under the first-to-file rule because the California action fails to plead fraud with the particularity as required by Federal Rule of Civil Procedure 9(b). (Opp. at 16-17.) Neither of the parties nor this Court has discovered any Fourth Circuit precedent supporting Relator's argument. Accordingly, his Court again turns to the plain language of the statute in finding that the California action is "pending" thus barring Relator Carter's "related action."

"When a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most

---

[7] In fact, Carter's action must be considered a "related action" under both the *Capella,* 1999 WL 464536 at *2, and *Ortega*, 240 F.Supp.2d at 8, tests.

16

extraordinary circumstance, is finished." *Ramey*, 326 F.3d at 476; *Cowart,* 505 U.S. at 475. Section 3730(b)(5)'s plain language establishes a first-to-file bar, preventing successive plaintiffs from bringing suit while a related action is "pending." While Congress chose to allow exceptions to some FCA provisions, such as § 3730(e)(4) (the public disclosure jurisdictional bar), § 3730(b)(5)'s plain language contains none. *See* 31 U.S.C. §§ 3730(b)(5), 3730(e)(4). "Moreover, an exception-free, first-to-file bar conforms with the dual purposes of the 1986 amendments [to the FCA]: to promote incentives for whistle-blowing insiders and prevent opportunistic successive plaintiffs." *Lujan,* 243 F. 3d at 1187. (citing *LaCorte,* 149 F.3d at 233-34 (discussing legislative history)).

Relator argues that a first-filed complaint should "not preempt a later filed complaint if the initial complaint fails to satisfy Fed. R. Civ. P. 9(b)." (Opp. at 17.) In support of this proposition, Relator cites to several cases best exemplified by a pair of Sixth Circuit cases, *Walburn v. Lockheed Martin, Corp*, and *Poteet v. Medtronic* (which relies on *Walburn*). *Walburn,* 431 F.3d 966 (6th Cir. 2005); *Poteet*, 552 F.3d 503 (6th Cir. 2009). In *Walburn* the Sixth Circuit held that the first-filed complaint's "failure to comply with Rule 9(b) rendered it legally infirm from its inception, and

17

therefore it cannot preempt [the later complaint] under the first-to-file bar." *Walburn*, 431 F.3d at 972. Similarly, the *Poteet* court held that "if the first complaint is either jurisdictionally precluded, *see* 31 U.S.C. § 3730(e), or legally incapable of serving as a complaint, *see* Fed. R. Civ. P. 9(b), then it does not properly qualify as a 'pending action' brought under the FCA." *Poteet*, 552 F.3d at 516.[8] This reading of §3730(b)(5) use "the strictures of Rule 9(b) [to] limit the preclusive effect of the first-filed complaint to claims that can be pleaded with particularity, thus obviating the danger of opportunistic relators filing unsupported placeholder complaints for the sole purpose of preemption." *Ortega*, 240 F.Supp.2d at 13.

In contrast, the Ninth Circuit in *Lujan* found that the purpose of § 3730(b)(5) was to increase the Government's awareness of the fraudulent activities of its contractors and that "the first-filed claim provides the government notice of the essential facts of an alleged fraud," thus "alerting the government to the essential facts of the scheme" and allowing the government the opportunity to intervene. *Lujan,* 243 F. 3d

---

[8] There are a number of district courts that have followed the *Walburn* rationale. *See e.g. United States ex rel Hefner v. Hackensack Univ. Med. Ctr.*, 240 F.Supp.2d 8, 13 (D.D.C. 2003)(holding that "the strictures of Rule 9(b) limit the preclusive effect of the first-filed complaint to claims that can be pleaded with particularity, thus obviating the danger of opportunistic relators filing unsupported placeholder complaints for the sole purpose of preemption"); *United States. ex rel Poteet v. Lenke*, 604 F.Supp.2d 313 (D. Mass. 2009).

18

at 1187. The *Lujan* court explicitly stated: "we reject [Relator's] contentions because they would require this court to read exceptions into the statute's plain language." *Id.*

Here, it is not disputed that the California case has not yet been dismissed. A plain reading of the statutory language indicates that a case that is not dismissed is clearly still "pending." There is no indication in the plain language of the statute indicating Congress's intent to carve out an exception to the first-to-file bar for actions that are currently pending but might later be dismissed based on Federal Rule of Civil Procedure Rule 9(b). Even where partial or complete dismissal of the first-filed case would be likely were a Rule 9(b) Motion made; and that potential dismissal would render the material facts and allegations of the two cases distinct; to follow the *Walburn* line of cases would require this Court to make a substantive determination about a case that is not before it. This Court will not do so. This Court finds that Carter's case, No. 1:09cv1162, is a "related action based on the facts underlying the pending [California] action" and is thus jurisdictionally barred. *See* 31 U.S.C. § 3730(b)(5); *Lujan* 243 F.3d at 1187; *Grynberg* 390 F.3d at 1279 n.1.

## IV. Conclusion

For the reasons stated above, this Court will grant Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 31 U.S.C. § 3730(b)(5).

An appropriate Order will issue.

|  | /s/ |
|---|---|
| May 10, 2010 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |